**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  NORTHERN DISTRICT OF CALIFORNIA
10
11   JENNA HALL,                          No. C 09-1629 JL
12          Plaintiffs
                                          **SUMMARY JUDGMENT**
13       v.                               **(Granting Docket # 44)**
14   CITY OF FREMONT; JEREMY
     MISKELLA, et al.,
15
            Defendants.
16   _____/
17
18       Defendants' motion for summary judgment came on for hearing. Attorney for Plaintiff

19   was Brad C. Brereton, CROWLEY & BRERETON. Attorney for Defendants was Gregory

20   Mellon Fox, BERTRAND, FOX & ELLIOT. The Court carefully considered the moving and

     opposing pleadings, the supporting declarations, the arguments of counsel and the record
21
     in this case and hereby grants Defendants' Motion for summary judgment on all claims.
22
     Judgment shall be entered for Defendants.
23
         **I.    INTRODUCTION**
24
         All parties consented to this Court's jurisdiction under 28 U.S.C. §636(c). The
25
     material facts presented in the instant motion are undisputed. Although Plaintiff repeatedly
26
     argues that the facts are in dispute, she has not identified any disputed issues of fact and
27
     she ignores that the facts presented are based upon her own testimony. Plaintiff, in
28

1  actuality, merely disagrees with the interpretation of the undisputed facts and their resulting

2  legal significance. She improperly seeks to ignore controlling legal standards and to limit

3  analysis solely to her statement about killing herself in isolation, while ignoring the totality of

4  the circumstances surrounding her statement.

5        The undisputed evidence establishes that, at the time of the incident, Plaintiff was

6  upset and irritated that officers were at her home conducting a welfare check in response to

7  a report that her husband had threatened suicide. In addition, Plaintiff appeared to the

8  responding police officers to be stressed and depressed by her responsibilities as the sole

9  caretaker for her housebound, ailing husband and elderly father. Finally, she never denied

10  saying, "I would rather kill myself than call you," in response to Officer Miskella's offer of a

11  business card and future assistance. It also is undisputed that Plaintiff never said that she

12  made the statement in jest or anger. Viewing her statement about killing herself in the

13  context of the totality of the circumstances, as the Court must, the undisputed evidence

14  establishes that probable cause supported Plaintiff's detention for a §5150 mental health

15  evaluation, her civil rights were not violated and Officer Miskella is entitled to qualified

16  immunity from Plaintiff's § 1983 claim and immunity under state law.

17        By stipulation of the parties, Plaintiff took the deposition of Sergeant Robert

18  Alexander, the third officer present at Plaintiff's house on the day of the incident. Sergeant

19  Alexander was the acting sergeant with Officer Miskella at the scene of the incident and

20  has experience with 5150 detentions, and he was able to provide additional information as

21  to the standards and criteria used by police officers detaining persons under Cal. Wel. &

22  Inst. Code 5150. Sergeant Alexander explained in his deposition that the foundational

23  requirement to place someone on hold on the basis of Cal. Wel. & Inst. Code 5150 is

24  evidence that they are "a danger to themselves, a danger to others, or gravely disabled"

25  (Alexander Deposition 26: 6-12).  When asked whether the statement made by the plaintiff,

26  Jenna Hall, was sufficient evidence for the department to allow a detention, Sergeant

27  Alexander responded "... that doesn't sound like I want to harm, or I want to kill myself or

28  others. That's more of a – I'd rather die than fly Jet Blue again..." (Alexander Deposition

United States District Court

For the Northern District of California

28:19 – 29:11). Sergeant Alexander further explained that while the standard to detain is, "is it a possibility or credible threat that this person might in fact carry out the action that they said. The statement [provided by plaintiff's counsel], it seems like it's more a statement of fact as to something else as opposed to I'm going to do this, or I feel like doing this." (Alexander Deposition 30:11-13).

However, Plaintiff concedes Sergeant Alexander does not recall anything about the incident or Plaintiff, other than the unique placement of her home. (Alexander Deposition 24:8-25:17). Sergeant Alexander consequently could not observe Plaintiff's demeanor at the time of her exchange with officer Miskella.

The Court finds Plaintiff's proffer of Sergeant Alexander's testimony to be unconvincing. Plaintiff's own testimony established that Sergeant Alexander was not present during her initial contact with the officers in which she was irritated, upset and uncooperative with their efforts to check on Mr. Foss. Sergeant Alexander only waited with Plaintiff in the living room while Officers Miskella and Hanrahan contacted Mr. Foss, and Sergeant Alexander left the scene and was not present when Plaintiff made the statement about killing herself. Sergeant Alexander was on the scene only briefly and was not present during any material time. Plaintiff's own version of the events is the same as that presented in Defendants' moving papers in all material aspects. All of the facts presented were derived from Plaintiff's testimony, to avoid any factual disputes. In any event, reasonable officers may differ in their assessment of a situation and Sergeant Alexander's testimony does not alter this Court's conclusion regarding the reasonableness of Miskella's conduct.

## II.    Factual Background

### A.    Why Sally Shi, the caregiver for Plaintiff's husband, called the police

On January 14, 2008, Plaintiff's husband, Jerry Foss, was alone in his bedroom with the door locked when his home healthcare nurse Sally Shi arrived. (Deposition of Jerry Foss, "Foss Deposition", 10:12-21, 11:15-19, 14:3-21; Deposition of Plaintiff Jenna Hall, "Hall Deposition", 21:13-23, 28:24-29:1.) Mr. Foss was homebound, suffering from numerous serious health ailments, and he received regular assistance from Sally through a

United States District Court
For the Northern District of California

1   home health care service. (Hall Deposition, 31:2-8, 32:14-18, 34:4-24.) Plaintiff was Mr.

2   Foss's primary, full-time caregiver, and also the full-time caregiver for her elderly father who

3   lived in the house next door. (Hall Deposition, 29:9-11, 32:3-7, 62:6-16.)

4          When Sally spoke to Mr. Foss through the closed door, Mr. Foss heard her call his

5   name, but could not understand what else she said. He responded, "I tried, but I can't do it

6   myself." (Foss Deposition, 17:21-19:6.) Sally made two other statements and Mr. Foss

7   replied in the same way because he believed Sally was talking about changing his

8   colostomy bag. (Foss Deposition, 19:23- 20:6.) Sally apparently misunderstood what Mr.

9   Foss said and she called 911 to report that she had asked Mr. Foss if he wanted to kill

10  himself and he responded, "Yes, I want to kill myself but I cannot."

11         City of Fremont Police Officer Jeremy Miskella was on patrol when he received a call

12  from dispatch reporting a suicide threat at Plaintiff's residence address. (Deposition of Ofc.

13  Jeremy Miskella, "Miskella Deposition", 21:22-22:1, 22:14-15, 23:1-6.) He immediately

14  drove there to conduct a welfare check to determine whether anyone there in fact had or

15  was threatening to hurt themself or anyone else. (Miskella Deposition, 24:16-20, 25:8-14,

16  26:10-15, 39:7- 40:6.) Officer Mark Hanrahan was already at the scene and he and Officer

17  Miskella approached the residence and knocked on the door. (Miskella Deposition,

18  26:24-27:3, 28:6-12.) The officers received no response to a series of knocks, and they

19  confirmed with dispatch that the reports were related to Plaintiff's residence address.

20  Dispatch then attempted to telephone Plaintiff's residence but received no answer. One of

21  the officers walked around to the back of the residence to see if there was another

22  entrance and whether they could get a response at the alternate entrance. (Miskella

23  Deposition, 28:16-29:10.)

24         Plaintiff was startled by a loud pounding on the door. (Hall Deposition 54:16-18). She

25  jumped up to answer it and as she was approaching the door she heard a second loud

26  knock. (Hall Deposition 56:12- 57:2). Plaintiff opened the door to find police officers

27  standing at her front door. (Hall Deposition 63:1- 4) (Miskella Deposition 28:19-21). They

28  explained they were there to do a check because it had been reported that someone in the

United States District Court

For the Northern District of California

1   house was suicidal. (Hall Deposition 63:12-23) (Miskella Deposition 30:1-2, 31:14-16).

2   Plaintiff told the officers that everything was fine and she explained Foss's health situation

3   to them. (Hall Deposition 65:14-18). The officers continued to insist on coming into the

4   house to check on Foss and she repeatedly told them that he was fine. (Hall Deposition

5   66:7-90) (Miskella Deposition 33:3-14). Plaintiff was irritated at the officers because she

6   believed she was giving them all the information they were asking for but it was not

7   satisfying them. (Hall Deposition 68:25- 69:3).

8        Finally, when Sergeant Alexander arrived on the scene and explained that the

9   officers were required by law to check on Jerry Foss, Plaintiff allowed them into her home.

10  (Hall Deposition 70:20-23 & 71:18-19). Plaintiff stayed in her living room with Sergeant

11  Alexander while Officers Miskella and Hanrahan went to the bedroom to check on Foss.

12  (Hall Deposition 71:25 – 72:15) (Miskella Deposition 35:18-19). Plaintiff and Sergeant

13  Alexander listened to the officers in the bedroom question Foss. Finally, Sergeant

14  Alexander said that the questioning was taking too long and he was going to "wrap it up."

15  (Hall Deposition 73:13-15). After the officers were finished talking to Foss, Sergeant

16  Alexander and Officer Hanrahan left the house, and Officer Miskella stayed behind with

17  Plaintiff. (Hall Deposition 76:10-13).

18       **B.    Plaintiff alleges that Officer Miskella made a sexual advance which she rejected**

19

20       Plaintiff was sitting at her computer terminal in the living room when Officer Miskella

21  entered the room, knelt down next to her chair, held out his business card and whispered in

22  a soft voice, "If you ever need help, don't hesitate to call me, I'll be there." (Hall Deposition

23  75:9-19). Plaintiff turned to Officer Miskella and whispered back "I'd rather kill myself then

24  call you." (Hall Deposition 75:21-22).

25       **D.    The arrest, for which Plaintiff alleges a claim for Assault and Battery**

26       Officer Miskella took Plaintiff by the arm and escorted her toward the front door and

27  down the front steps. (Hall Deposition 82:7- 83:3). As Officer Miskella pulled her out of her

28  home she repeatedly told him he was hurting her and asked him to let go of her. (Hall

United States District Court

For the Northern District of California

1   Deposition 82:7-83:3).

2       **E.    Plaintiff is transported to hospital and ultimately released**

3       Plaintiff was taken by ambulance to John George Hospital where she was

4   processed, and eventually spoke to a psychiatrist. (Hall Deposition 132:13-133:17). Plaintiff

5   was released that same day.

6       **III.    ANALYSIS**

7       **A.    The uncontroverted evidence establishes that Plaintiff's civil rights were
    not violated and her claims under 42 U.S.C. § 1983 are unsupportable**

8

9       Detention for a mental health evaluation pursuant to Welf. & Inst. Code § 5150 is

10  analyzed under the Fourth Amendment reasonableness standard and is analogous to a

11  criminal arrest that must be supported by probable cause. (*Maag v. Wessler*, 960 F.2d 773

12  , 775 (9th Cir. 1991); *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007). 'Probable

13  cause' by definition deals not with certainty, but with probabilities: ". . . the evidence thus

14  collected must be seen and weighed not in terms of library analysis by scholars, but as

15  understood by those versed in the field of law enforcement." *(Illinois v. Gates*, 462 U.S.

16  213, 231-232 (1983).) Police officers are not required to perform an error free investigation.

17  (*Baker v. McCollan*, 443 U.S.137, 145 (1979).) All that is required is that – as here—the

18  facts fall on the side of probability. *(Brinegar v. United States*, 338 U.S. 160, 176 (1949);

19  *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004).)

20      Under § 5150, probable cause exists for a mental health detention, "if facts are

21  known to the officer 'that would lead a person of ordinary care and prudence to believe, or

22  to entertain a strong suspicion, that the person detained is mentally disordered and is a

23  danger to himself or herself.' … To justify the detention, the officer must point to 'specific

24  and articulable facts which, taken together with rational inferences from those facts,

25  reasonably warrant his or her belief or suspicion.' … 'Each case must be decided on the

26  facts and circumstances presented to the officer at the time of the detention …'" (*Bias*, 508

27  F.3d at 1220, *People v. Triplett*, 144 Cal.App.3d 283, 287-88 (1983).) "It is sufficient if the

28

1   officer, as a lay person, can articulate behavioral symptoms of mental disorder, either

2   temporary or prolonged.…[G]enerally mental disorder might be exhibited if a person's

3   thought processes as evidenced by words or actions or emotional affect, are bizarre or

4   inappropriate for the circumstances." (*Triplett,* 144 Cal.App.3d at 288.)

5       In this case, the undisputed evidence establishes probable cause for Plaintiff's

6   detention under § 5150. It is undisputed, and Plaintiff admitted in her deposition, that she

7   was upset, irritated and uncooperative when the officers initially contacted her. She told

8   Officer Miskella that her husband suffered from serious medical conditions that required

9   home health care, and Officer Miskella observed Mr. Foss's condition when he contacted

10  him in his bedroom. After seeing Mr. Foss's condition and Plaintiff's state, Officer Miskella

11  offered her his business card and told her she could call him anytime. Plaintiff, by her own

12  testimony, slowly and deliberately responded, " I'd rather kill myself than call you."

13      Based upon Officer Miskella's observations of Plaintiff's home life situation as the

14  primary caregiver for her ailing husband, her demeanor and her upset state, he reasonably

15  interpreted that her slow, deliberate statement that "I'd rather kill myself than call you."

16  indicated that she might harm herself. A reasonable officer in the same circumstances

17  would have believed that her statement about killing herself was bizarre or inappropriate

18  under the circumstances, particularly given that the officers were in full police uniform at the

19  residence investigating reports of a threatened suicide. Indeed, Plaintiff testified in her

20  deposition that when the officers explained that they were there in response to reports of a

21  suicide threat, the officers' manner showed "kind of a sense of urgency" for the potential

22  seriousness of the situation. (See Plaintiff's deposition, 63:10-64:5, Ex A to Declaration of

23  Joshua K. Clendenin ). Plaintiff did not appear to Miskella be making a joke when she

24  stated she would rather kill herself. It is undisputed that she never said she was joking or

25  did not mean what she said, and her own testimony indicates that the statement was made

26  in a quiet, slow, serious manner.

27      Plaintiff's argument that Officer Miskella made a "sexual advance" towards her and

28  that her statement "I'd rather kill myself than call you" was merely a rejection of his advance

    and should have been understood as such, is wholly unsupported by the undisputed

United States District Court
For the Northern District of California

1   evidence. Based upon Plaintiff's own testimony, after Officer Miskella observed her upset,

2   irritated state, after she detailed Mr. Foss's deteriorated physical condition, and after Officer

3   Miskella contacted Mr. Foss and observed his compromised physical condition and

4   Plaintiff's difficult living conditions, Officer Miskella merely offered her a business card and

5   said in a soft voice, "If you ever need help, don't hesitate to call me, I'll be there."

6       It is undisputed that Officer Miskella never touched her in any way while offering his

7   business card and future assistance, or at any time other than to escort her outside to

8   detain her for a mental health evaluation. The entire basis for her claim that Officer Miskella

9   "came on" to her is that he purportedly kneeled down next to her and "whispered in a soft

10  voice" his offer of future assistance as he tried to hand her his business card. The

11  undisputed, objective facts, based on Plaintiff's own testimony, do not in any way support a

12  reasonable inference that Officer Miskella's offer of assistance and a business card was a

13  "sexual advance" towards Plaintiff.

14      Plaintiff presents no disputed issues of material fact at all, merely her subjective

15  interpretation of the undisputed facts analyzed using improper legal standards. While

16  Plaintiff claims that she "understood" Officer Miskella's conduct to be "a sexual advance",

17  nothing in the undisputed evidence reasonably supports her "understanding". Further,

18  Plaintiff improperly seeks to limit the entire probable cause analysis to her statement, "I'd

19  rather kill myself than call you." The law is clear, however, that probable cause must be

20  determined based upon the totality of the circumstances known to the officer at the time;

21  not with the 20/20 vision of hindsight, and not based upon a single statement viewed in

22  isolation. Officer Miskella's determination to detain Plaintiff was not made based solely on

23  her statement she would rather kill herself, irrespective of her demeanor, affect and difficult

24  and stressful living situation, as any probable cause determination necessarily requires

25  evaluation of the totality of the circumstances. Her claim that Officer Miskella did not testify

26  that she sounded "sad or depressed" is immaterial, as §5150 does not require that

27  someone exhibit feelings of being sad or depressed before they may be detained as a

28  potential danger to themselves or others, nor is there any authority limiting harmful or

    suicidal conduct to persons deemed sad or depressed.

United States District Court
For the Northern District of California

1    Plaintiff's argument about general reference to "death" as rhetorical speech or for

2    purposes of emphasis in common speech is irrelevant. It is undisputed that she never

3    informed the officers that she did not in fact intend to kill herself or that her statement about

4    killing herself was made in jest, for emphasis, or in a rhetorical manner. Plaintiff again

5    ignores the totality of the particular circumstances of this case. Plaintiff's statement that she

6    would rather kill herself in response to a simple offer of assistance and a business card was

7    unreasonable, and in light of the circumstances, reasonably indicated that Plaintiff was

8    stressed over her home life and was a possible danger to herself.

9    Plaintiff's argument that Officer Miskella should have understood that she did not

10   mean she really intended to kill herself when she said, "I'd rather kill myself than call you",

11   but rather that she had made the statement because she was upset with the officers for

12   intruding into her home, is likewise unsupported by the evidence. Officer Miskella did not,

13   as Plaintiff misrepresents in her opposition, "force his way into" her home. Indeed, Plaintiff

14   testified in her deposition that the officers spoke with her for a protracted period of time at

15   her doorway trying to explain why they needed to check on Mr. Foss in light of the reported

16   suicide threat, and that she only relented and allowed the officers into the house after

17   Sergeant Alexander again explained to her that the police needed to investigate the suicide

18   report themselves. Further, Plaintiff testified in her deposition that her statement, "I'd rather

19   kill myself than call you," was made in a quiet, whispered manner, not in an angry, upset

20   tone. Nor was her statement, purportedly made out of anger towards Officer Miskella and

21   the police intrusion, directed towards the police. Rather, her statement specifically related

22   to killing herself. Plaintiff's own testimony belies her argument that Officer Miskella should

23   have known her statement was made in anger.

24   Plaintiff's attempt to isolate the Court's analysis to her statement  as the sole basis

25   for the §5150 detention and to have the Court ignore the undisputed evidence regarding

26   her demeanor, behavior, statements about her difficult home life, Mr. Foss's condition, her

27   stressful living conditions and the totality of the circumstances is directly contrary to

28   controlling authority and unreasonable. The Court is required to consider the statement

about killing herself in the context of the totality of circumstances surrounding the incident.

United States District Court

For the Northern District of California

1   The undisputed circumstances establishes that probable cause existed for Plaintiff's 5150

2   detention.

3       **B.      Plaintiff's claim for excessive force under §1983 also is wholly**
        **unsupported by the undisputed evidence.**
4

5       To determine whether an officer's use of force was reasonable under the Fourth

6   Amendment, the court should consider the totality of the circumstances. (*Graham v.*

7   *Connor*, 490 U.S. 386, 396 (1989).) "The reasonableness of a particular use of force must

8   be judged from the perspective of a reasonable officer on the scene, rather than with the

9   20/20 vision of hindsight. . . .

10      Not every push or shove, even if it may later seem unnecessary in the peace of a

11  judge's chambers . . . violates the Fourth Amendment."(*Id.* at 396-397.) Plaintiff testified

12  that Officer Miskella only grabbed her forearm as he escorted her out of the house after

13  deciding to detain her. She claims that he pressed on her arm, causing her to feel pain.

14  She complained that he was hurting her and demanded he let go, and that he then let go of

15  her arm once they were outside. She did not suffer any resulting injury. Based upon the

16  totality of the circumstances, this Court finds that Officer Miskella's minimal use of force to

17  escort Plaintiff out of her residence for a mental health evaluation was reasonable and did

18  not violate the Fourth Amendment.

19      Plaintiff's argument that a triable issue of fact exists because there is a "factual

20  dispute as to the officer's true motivations" is meritless, and misconstrues the Fourth

21  Amendment reasonableness standard in this context. (Opposition 12:12-14.) The Supreme

22  Court has plainly stated that:

23          As in other Fourth Amendment contexts … the "reasonableness" inquiry in an
            excessive force case is an objective one; the question is whether the officers'
24          actions are "objectively reasonable" in light of the facts and circumstances
            confronting them, without regard to their underlying intent or motivation. … An
25          officer's evil intentions will not make a Fourth Amendment violation out of an
            objectively reasonable use of force; nor will an officer's good intentions make an
26          objectively unreasonable use of force constitutional. [Internal citations omitted.]

27
    (*Graham*, 490 U.S. at 397; see also *Wren v. U.S.*, 517 U.S. 806, 813-815 (1996).) As
28
    detailed above, Plaintiff's detention was supported by probable cause and the minimal

United States District Court

For the Northern District of California

1   force used was reasonable under the totality of the circumstances. Plaintiffs' speculation as

2   to Officer Miskella's true motives is insufficient to raise a triable issue under the facts or

3   law.

4        Based upon the undisputed evidence, the totality of the circumstances known to

5   Officer Miskella at the time he detained Plaintiff were sufficient to support probable cause

6   for a 5150 mental health evaluation as to whether Plaintiff was a danger to herself. Whether

7   she in fact intended to kill herself is immaterial. The law does not require that police officers

8   make an accurate medical diagnosis of mental disorder, but requires only that the officer,

9   as a lay person, articulate behavioral symptoms of mental disorder based upon words,

10  actions or emotional affect that are bizarre or inappropriate for the circumstances. Under

11  the circumstances, Officer Miskella could not be expected to know that Plaintiff would

12  entirely misconstrue his simple offer of a business card and future assistance, or that she

13  did not intend to act on her statement that she would rather kill herself than to call him.

14  Officer Miskella's decision to detain Plaintiff for a mental health evaluation under §5150

15  was supported by probable cause and did not violate Plaintiff's Fourth Amendment rights.

16  His minimal use of force during her escort out of the residence also was reasonable under

17  the circumstances. Plaintiff's §1983 claim against Officer Miskella is unsupported by the

18  undisputed evidence.

19  **C.    Officer Miskella is entitled to qualified immunity from Plaintiff's § 1983 Claim**

20

21       Plaintiff argues that her speculation about Officer Miskella's "true motivation"

22  precludes a finding of qualified immunity, and she asserts that disputed issues of fact exist

23  although she fails to identify any disputed facts or evidence. Whether Officer Miskella is

24  entitled to qualified immunity based upon the undisputed facts is a question of law for the

25  Court. Plaintiff's interpretation of the undisputed facts is not evidence and is insufficient to

26  raise a triable issue.

27       Qualified immunity protects government officials from liability "insofar as their

28  conduct does not violate clearly established statutory or constitutional rights of which a

    reasonable person would have known. … qualified immunity applies regardless of whether

United States District Court
For the Northern District of California

1  the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on

2  mixed questions of law and fact." (*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815

3  (2009).) Qualified immunity applies where a reasonable officer could have believed the

4  conduct was justified, notwithstanding that reasonable officers could disagree on that issue.

5  (*Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996). (Overruled in part

6  on other unrelated grounds, *Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997). )

7  A court discerns whether "the [officer] acted reasonably under settled law in the

8  circumstances, not whether another reasonable, or more reasonable interpretation of the

9  events can be constructed…after the fact." (*Hunter v. Bryant,* 502 U.S. 224, 228 (1991).)

10      The relevant, dispositive inquiry in determining whether a right is clearly established

11  is whether it would be clear to a reasonable officer that his conduct was unlawful in the

12  situation he confronted." (*Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Brousseau v. Haugen*,

13  543 U.S. 194, 205 (2004).) It is Plaintiff's burden to prove that the law governing the

14  officers' conduct was "clearly established." (*Maraziti v. First Interstate Bank of Cal.*, 953

15  F.2d 520, 523 (9th Cir. 1992).)

16      Accordingly, in determining whether the law is clearly established for a particular

17  mental health detention, it is not enough to "determine the broad question of whether the

18  seizure of [the detainee] violated the fourth amendment's proscription against unreasonable

19  seizures…To do so would merely state [the detainee's] right in the abstract, rather than his

20  rights under the particular circumstances of [the] case as the Supreme Court has

21  mandated." (*Maag*, 960 F.2d at 775.) Moreover, "The Supreme Court has 'recognized that

22  it is inevitable that law enforcement officials will in some cases reasonably but mistakenly

23  conclude that probable cause is present.' . . . In such cases those officials should not be

24  held personally liable." *(Rodis v. City and County of San Francisco,* 558 F.3d 964, 970- 71

25  (9th Cir. 2009), citing *Hunter,* supra, and *Anderson v. Creighton*, 483 U.S. 635, 641

26  (1987).)

27      In the instant case, the totality of the undisputed facts show that a reasonable officer

28  would have believed there was probable cause to detain Plaintiff after she said she would

rather kill herself than call Officer Miskella. Even if reasonable officers might disagree as to

United States District Court

For the Northern District of California

1   whether Plaintiff's detention was warranted, and even if Officer Miskella was mistaken as to

2   whether Plaintiff in fact was a danger to herself, his belief was reasonable under the

3   circumstances and he is entitled to qualified immunity from Plaintiff's §1983 claim.

4          Plaintiff fails to meet her burden to establish that the law governing Officer Miskella's

5   conduct in this particular case was clearly established. Her attempt to summarily dispense

6   with this element by relying on the broad, general proposition that, "There is no question

7   that a person has a constitutional right to be free from detention without probable cause,

8   therefore, only the second prong of the qualified immunity test is at issue here" is improper

9   and unavailing.

10         The Supreme Court repeatedly has made clear that inquiry as to whether the law

11  was clearly established "must be undertaken in light of the specific context of the case, not

12  as a broad general proposition." (*Saucier*, 533 U.S. at 205.) As the Supreme Court

13  explained in *Brousseau*, supra:

> Because the focus is on whether the officer had fair notice that her conduct was unlawful, … If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability …
> It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."
> [*Saucier*, supra], at 201 … As we previously said in this very context:
> "[T]here is no doubt that Graham v. Connor, supra clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather … 'the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'

21  [*Anderson*, 483 U.S. at 640.] The relevant, dispositive inquiry in determining whether a right

22  is clearly established is whether it would be clear to a reasonable officer that his conduct

23  was unlawful in the situation he confronted." *Id.* at 201-202… (*Brousseau*, 543 U.S. at

24  198-199.) The general test of reasonableness set out in Graham is "cast at a high level of

25  generality" and only provides "clearly established" law in obvious cases. (*Id.* at 199.)

26         The undisputed facts here do not present an "obvious" case in which Officer Miskella

27  should have known that he was required to disregard Plaintiff's admittedly aggravated

28  demeanor and her extremely difficult living situation, to understand that Plaintiff

United States District Court

For the Northern District of California

1    misconstrued his simple offer of assistance and a business card as a sexual advance, and

2    understand that her statement "I'd rather kill myself than call you" was not sincere. Officer

3    Miskella determined that probable cause existed for Plaintiff's mental health detention

4    based upon the totality of the circumstances known to him at the time, and the law was not

5    clearly established that his determination under those circumstances was wrongful. Plaintiff

6    has not presented any authority at all suggesting that his determination of probable cause

7    under even somewhat similar circumstances was wrongful. Indeed, although Plaintiff

8    attempts to justify her statement by characterizing Officer Miskella's conduct as a sexual

9    advance, she presents no authority at all that Officer Miskella should have known that

10   offering a police business card and future assistance to an apparently distraught individual

11   living in a stressful situation, even stated in a "whisper" or "soft voice," somehow could be

12   construed as a sexual advance which might justify her statement about killing herself.

13   Plaintiff failed to meet her burden to show the law governing Officer Miskella's conduct was

14   clearly established in any relevant sense.

15        Moreover, Plaintiff's attempt to ignore the totality of the circumstances and focus

16   entirely on her statement "I'd rather kill myself than call you," "calmly delivered" in a

17   "whisper," again is improper under well-settled authority. Her argument that probable cause

18   did not exist because there is no evidence Plaintiff in fact "was depressed, had a history of

19   depression, was acting irrationally, or was overly excited," did not show "incoherent or

20   irrational conduct or speech" and had "no physical evidence of injury or threat to anyone" is

21   unsupported in law and fact. Detention under §5150 does not require such manifestations

22   for a determination that an individual is a danger to themselves or others because of a

23   mental disorder. Further, the undisputed evidence in fact shows that Plaintiff was acting

24   irrationally by "calmly" and quietly making a statement to a uniformed police officer

25   investigating reports of a threatened suicide in which she specifically stated she would

26   rather kill herself. Her claim that qualified immunity should be denied because a triable

27   issue of fact exists as to whether Officer Miskella was "coming on" to her is meritless. The

28   facts in the instant motion are undisputed and based on Plaintiff's own testimony. Her

     testimony that Officer Miskella knelt down, offered her a business card and quietly

United States District Court
For the Northern District of California

1   "whispered" "If you ever need help, don't hesitate to call me, I'll be there," with absolutely

2   nothing more, does not even support an inference of a sexual advance. Her unreasonable

3   characterization of his offer of assistance in her stressful living situation does not raise a

4   triable issue.

5          Plaintiff likewise fails to identify any authority or facts that preclude qualified

6   immunity as to her excessive force claim. Officer Miskella used minimal force to escort

7   Plaintiff out of the house, which did not result in any injury to her. Officers are permitted to

8   use reasonable force to effectuate an arrest, and not every push or shove violates the

9   Fourth Amendment. Based upon the law and undisputed evidence, Officer Miskella is

10  entitled to qualified immunity from Plaintiff's §1983 claim for unreasonable detention and

11  excessive force.

12          **D.    The undisputed evidence fails to support Plaintiff's Assault and Battery
13                  Claim**

14          Plaintiff's claim for assault and battery under state law is barred by Welf. & Inst.

15  Code § 5278 and is unsupported by the undisputed evidence. "Section 5278 provides that

16  an individual authorized to detain a person pursuant to section 5150 'shall not be held

17  either criminally or civilly liable for exercising this authority in accordance with the law.'"

18  (*Bias*, 508 F.3d at 1221; Welf. & Inst. Code § 5278.) A detention for mental health

19  evaluation under § 5150 that is supported by probable cause is a detention "in accordance

20  with the law", and state law torts based upon the detention are barred by §5278. (*Id.* at

21  1221-1222; *Heater v. Southwood Psychiatric Ctr.*, 42 Cal.App.4th 1068, 1083 (1996).)

22  Plaintiff's detention in the instant case was supported by probable cause, so her detention

23  was "in accordance with the law". Plaintiff's assault and battery claim based upon Officer

24  Miskella's grabbing her arm to escort her out of the residence to detain her for evaluation,

25  therefore, is barred by §5278. She was not handcuffed.

26          Moreover, irrespective of §5278, the undisputed evidence does not support Plaintiff's

27  assault and battery claim. Officer Miskella's took Plaintiff's arm to escort her outside. The

28  detention was brief, minimal and did not cause any injury. His minimal contact with Plaintiff

    was reasonable and privileged pursuant to her detention, and there is no evidence that he

United States District Court

For the Northern District of California

1  intended to harm or offend Plaintiff by grabbing her arm. Plaintiff's assault and battery claim

2  is meritless.

3  **E.      The undisputed evidence fails to support a claim for Intentional Infliction of Emotional Distress**

4

5      Plaintiff's detention was supported by probable cause and in "accordance with the

6  law,"  her claim for intentional infliction of emotional distress is barred by Welf. & Inst. Code

7  5278. Her emotional distress claim also is barred by Govt. Code § 856, which "affords

8  public entities and their employees absolute protection from liability for 'any injury resulting

9  from determining in accordance with any applicable enactment…whether to confine a

10 person for mental illness…'" (*Johnson v. County of Los Angeles*, 143 Cal.App.3d 298, 314

11 (1983).) §856 "provides immunity only for injuries resulting from the determination whether

12 to confine, but provides for liability when a public employee negligently carries out that

13 determination." (*Id.*; Cal. Gov. Code 856.) The California "Supreme Court has expressly

14 held that the scope of the immunity granted in section 856, subdivision (a)(1) 'extends not

15 only to the final determination to confine or not to confine the person for mental illness, but

16 to all determinations involved in the process of commitment." [Italics in original.] (*Johnson*,

17 143 Cal.App.3d at 315, citing *Tarasoff v. Regents of University of California*, 17 Cal.3d.

18 425, 448 (1976).) Officer Miskella's determination that Plaintiff should be detained for

19 evaluation pursuant to § 5150 also falls within the immunity granted by § 856. His only

20 conduct occurred during "the process of commitment" and there is no evidence of any

21 negligent or wrongful conduct during the course of Plaintiff's confinement. Officer Miskella

22 is entitled to immunity from Plaintiff's intentional infliction of emotional distress claim under

23 §856.

24      Plaintiff's argument that §856 immunity does not apply because her detention was

25 not supported by probable cause is meritless. The totality of the undisputed circumstances

26 establishes probable cause supporting her detention. Plaintiff also misapprehends the

27 exceptions to §856, which are limited to "careless or wrongful behavior *subsequent* to a

28 decision respecting confinement". (*Johnson*, 143 Cal.App.3d at 315-16. The exceptions do

not apply to the determination whether to confine an individual, as such an exception would

1  render the immunity a nullity. (*Id.*) Plaintiff also is incorrect in asserting that Welf. & Inst.

2  Code § 5278 is the only immunity that could apply in this case because §856 is a "more

3  general immunity." She ignores that §856 specifically protects public entities and their

4  employees from liability for determining whether to confine a person for mental illness.

5  Given that Officer Miskella is a public employee of the City, §856 is applicable in this case.

6  Moreover, Plaintiff's intentional infliction of emotional distress claim fails because the

7  undisputed evidence fails to show egregious, intentional conduct by Officer Miskella.

8  (*Aquino v. Superior Court*, 21 Cal. App. 4th 847, 856 (1993), see also*, Wong v. Tai Jing*,

9  189 Cal.App.4th 1354 (2010).) The undisputed evidence fails to show outrageous conduct

10  by Officer Miskella, or that he intended to cause Plaintiff emotional distress or recklessly

11  disregarded the probability that emotional that distress would result, particularly since

12  probable cause supported Plaintiff's detention. Her belief that the 5150 detention was

13  initiated in retaliation for her rejection of Officer Miskella's purported "come on" is wholly

14  unsupported by her own testimony, or any other evidence, and is pure speculation. The

15  intentional infliction of emotional distress claim is wholly unsupportable.

16  **F.     The undisputed facts do not support a Claim for False Arrest or False Imprisonment**

18  Officer Miskella cannot be liable for false arrest or false imprisonment because

19  probable cause existed for Plaintiff's detention. (*O'Toole v. Superior Court*, 140 Cal.App.4th

20  488, 511-512 (2006); Penal Code § 847.) Moreover, Plaintiff's false arrest and false

21  imprisonment claims arise out of Officer Miskella's decision to detain her for evaluation

22  under §5150. His conduct also falls within the protections of Welf. & Inst. Code § 5278 and

23  the immunity provisions of Govt. Code § 856. Based upon the undisputed facts, Plaintiff's

24  false arrest and imprisonment claims are unsupportable.

25  **G.     Officer Miskella is also entitled to immunity under Government Code § 820.2**

27  "The discretionary immunity rule is restated here in [Section 820.2 in] statutory form

28  to ensure that, unless otherwise provided by statute, public employees will continue to

remain immune from liability for their discretionary acts within the scope of their

United States District Court
For the Northern District of California

1  employment." (*Caldwell v. Montoya,* 10 Cal.4th 972, 986 (1995); Legislative Committee

2  Comment to Govt. Code § 820.2.) "[P]ublic employees are immune for their discretionary

3  acts, even those which constitute breaches of actionable duty, unless a statute otherwise

4  provides." (*Caldwell*, 10 Cal.4th at 984.) §820.2 "immunizes discretionary decisions

5  'whether or not such discretion be abused." (*Ortega v. Sacramento County Dept. of Health*

6  *and Human Servs.*, 161 Cal.App.4th 713, 728 (2008.) "[T]he exercise of discretion

7  invariably details the collection and evaluation of information. Thus, the collection and

8  evaluation of information is an integral part of 'the exercise of the discretion' immunized by

9  section 820.2." (*Id.* at 733.)

10       Based upon the undisputed evidence in this case, Officer Miskella's decision to

11  detain Plaintiff for a 5150 mental health evaluation was supported by probable cause. His

12  decision necessarily involved personal deliberation, decision and judgment. Officer

13  Miskella's exercise of discretion as to whether to detain Plaintiff, and whether to hold onto

14  her arm while escorting her outside, even if exercised badly, is subject to immunity under §

15  820.2.

16       **H.  Plaintiff's claim against the City for vicarious liability Is unsupportable**

17       Plaintiff's state law vicarious liability claim against the City is barred by Govt. Code §

18  815.2(b), which provides that a public entity is immune from liability to the same extent the

19  public employee is immune. The undisputed evidence fails to support Plaintiff's claims

20  against Officer Miskella, and he is immune from liability under Welf. & Inst. Code § 5278

21  and Govt. Code §§ 820.2 and 856. Plaintiff's vicarious liability claim against the City also

22  fails under §815.2.

23       **I.  Objections To Plaintiff's Evidence**

24       Defendants object to the following hearsay in Plaintiff's factual statement: "While

25  Plaintiff and Officer Hanrahan were waiting, Plaintiff asked Officer Hanrahan what was

26  wrong with Officer Miskella and he told her that Officer Miskella was being a 'hardnose' and

27  that 'this shouldn't be happening." (Opposition, 4:24-27.) This statement is offered for the

28  truth of the matter asserted and does not come within any exception to the hearsay rule.

     The Court excludes this statement as hearsay but also finds that it would not have had any

1   effect on the Court's analysis. Again, reasonable officers may differ, and this does not tip

2   the balance away from qualified immunity for Officer Miskella in this case.

3       **IV.    CONCLUSION**

4           Summary judgment is hereby be granted in favor of the City and Officer Miskella.

5   Judgment shall be entered for Defendants. The clerk shall close the file.

6           IT IS SO ORDERED.

7   DATED: May 23,  2011

8

9                                                    _____
                                                              James Larson
10                                                      U.S. Magistrate Judge

11

12

13   G:\JLALL\CASES\CIVIL\09-1629\Summary Judgment.wpd

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California